May it please the Court, my name is Judith Lott. I am here on behalf of the petitioner, Mr. Zia-Uddin Ahmadi. The basis of my argument this morning is that the Board of Immigration Appeals has issued two orders in this case that are entirely contradictory. The first order in the record at 367-368 grants Mr. Ahmadi's motion to reopen based on changed country conditions. That was on August 6, 2001. The second order, which contradicts the first, is the Board's cursory dismissal of Mr. Ahmadi's case. That's in the record at pages 1 and 2, issued March 30, 2005. To address credibility briefly, there is no explicit finding anywhere in the record that Mr. Ahmadi was not credible, therefore he is presumed to be credible. The slight discrepancy noted by the Board in a third order was that Mr. Ahmadi testified once to leaving Afghanistan in 1988 and later testified having left a couple years later. What are the dates of the two orders you are talking about? The motion to reopen was granted by the Board on August 6, 2001. That's at 367-368 in the record. The second order, March 30, 2005, dismisses Mr. Ahmadi's claim, virtually holding that the immigration judge's decision was without fault. Well, there were some changes going on in Afghanistan at the time. That was the basis for both these orders. The first order was based on the proofs that the Taliban were in control, and this man claimed to be persecuted by the Taliban because of his non-orthodox views. And then, by the time that the matter came before the BIA again, the Taliban were out, supposedly out. Well, the Board held that there's no evidence that repatriated Afghanis are targets of remnant Taliban. I argue that the record is full of evidence that repatriated Afghanis are targets of remnant Taliban. For example, in the record 192-193, the Amnesty International report strongly condemns any repatriation of Afghanis, whether they are returning refugees or whether they are simply denied asylum seekers. You're not claiming that the regnant Karzai government persecuted him. You're saying that the government cannot control groups that would persecute him, the groups being Taliban. That's exactly what I'm saying, and that's exactly what Mr. Ahmadi testified to, that the government at the time of his hearing was not able to control the Taliban element. And also, September 2003, in the record, this is in the record at 204-206, an article published by Christiane Ananpour from CNN, citing an upsurge in militant activity in Afghanistan, this is in 2003, and a quote from a former White House counterterrorism advisor who stated, quote, that the United States has given the Taliban and al Qaeda an opportunity to retrench and start to come back. That's in the record at 205. The State Department report confirms that in 2002 there was no available information for them to put in the report about repatriated – I'm sorry, about the forced return of Afghan refugees. I'd also like to address here what I call the Pakistan red herring. In his – in the judge's decision dated November 12, 2003, he seemed to be fixated on the fact that Mr. Ahmadi's wife and children were in Pakistan. I've provided two additional sites this morning, both of which were decided by this court after Judge Simpson determined that Mr. Ahmadi could be returned to Pakistan. The first of those sites is Siong, which holds that firm resettlement is not an appropriate finding if the person is not safe in the third country. Mr. Ahmadi testified that his wife and son were questioned in Pakistan about his whereabouts and that his son had actually been arrested while living in Pakistan. And the Maharaj site holds that firm resettlement requires a showing that it is permanent, not temporary. All that Judge Simpson cited to Mr. Ahmadi's ability to live in Pakistan was some temporary work visa from the late 80s, early 90s, and I would argue that that's not – Where is the evidence, counsel, that Mr. Ahmadi would face persecution because of some political ties, other than the fact that he just lived in the West? Well, my argument on that is this, Your Honor. The board cited the requirements in its motion – in its grant of Mr. Ahmadi's motion to reopen. One of those requirements was that the applicant must make a prima facie showing that he is both statutorily eligible for the relief that he seeks, which is asylum, and that he warrants the relief and the exercise of discretion. In so finding, the board has held that Mr. Ahmadi has put forth a prima facie claim. And I think the government will probably argue nexus here, But I think that the board's finding that there's a prima facie case is an admission that there's nexus. The nexus is the political opinion. The nexus is opposition to Taliban. And the question is whether or not the Taliban are sufficiently controlled or were sufficiently controlled in 2003 to make it reasonable to assume that Mr. Ahmadi could safely return. What you have to do is convince us that there's no substantial evidence on which the IJ could have found that in 2005 the Taliban did not persecute repatriated Afghanis because they'd been in the West with no political ties whatsoever. Well, except I believe that there is a political position of anti-Taliban. It's not a pro-West position, which Mr. Ahmadi kind of thinks it is in his testimony. But it's an anti-Taliban, and I think that there is evidence in the record. What we have for the What are Mr. Afghani's political ties that make him a target for the Taliban? Simply the fact that he's lived in the West since 1988? No, no, because he's opposed to the regime, because he was forced in the past to participate in Mujahideen activities, which are Mujahideen akin to the current Taliban. No, no, no. The Mujahideen split from the Taliban in 2001. They were the Northern Front. Well, they were the freedom fighters. The Taliban, also a group of terrorists that Mr. Ahmadi did not want to associate with, but was forced to. So his position is that there's at least a 10 percent chance that if he's returned to Afghanistan or to Pakistan, where they've apparently been looking for him, that he will be harmed by terrorist organizations that the government is unable or unwilling to control. And I'll reserve my minute and 30 seconds. Thank you. We'll hear from the government. Good morning, Your Honors. I'm Erica Miles for the respondent, Attorney General Holder. The Court should deny this petition for review because Mr. Ahmadi has not demonstrated that the record evidence compels reversal of the Board and immigration judges' decisions in this case, the agency's decisions. The Board granted Mr. Ahmadi's motion to reopen in 19 he filed in 1999, which is based on his claim that he feared persecution in Afghanistan at the hands of the Taliban, who was then in control. This was after he was already ordered excluded based on another asylum application that this court upheld that finding of exclusion. But at the time of his hearing before the immigration judge in November 2003, the Taliban had already been ousted from power, and an interim government was already in place and operating by the current President Karzai. Thus, the Taliban was no longer in the position to be persecuting him. They were not the governing authority. And his basis for his 1990 renewed asylum application and motion to reopen no longer existed. Do we look at it as of 2003 or as it now is? I'm sorry. Could you please repeat? Yes. Do we look at it as though it was in 2003, or do we look at it as it now is with regard to the Taliban? The court is, this court should be confined to the record as the statute requires, that the record as it is now contained is the record before you. If there have been any changed circumstances, he could yet again file a motion to reopen with the board on that basis. So he would have a remedy if there has been some other big change in circumstances affecting his eligibility for asylum. He hasn't done that. And the record here before the immigration judge and before the board clearly demonstrated that he didn't show that the Taliban was in a position to persecute him. He didn't show that the existing central government would not or could not protect him if he went back. And mind you, he hails from Kabul. That is where the central government is located. And the evidence in the record showed that the Taliban had retreated to very remote areas and they were not even in control at the time. There was no evidence that they were in Kabul or even causing significant problems in Kabul. As for his claim to Pakistan, it should be noted that he hasn't, before this court, even raised any claim as to fear of harm if he returns to Pakistan. But regardless, we don't have an order of removal to Afghanistan or Pakistan here. We have an order of exclusion. No country was designated under that old regime of deportation and exclusion proceedings. Therefore, wherever the government could get documentation and permission for his return, it's where they would send him at this point. Other than that, if the court doesn't have any further questions, the government will sit down. Thank you. Thank you. You have a minute and a half left. Just briefly, I think I was confused earlier when the court asked me to analyze the situation as of 2005. The board's decision was 2005, but counsel's correct. The country conditions that we're analyzing here is 2003. Counsel has indicated that there's no evidence in the record that indicates that Mr. Ahmadi would have been harmed or would be harmed if returned to Afghanistan. I simply read the record differently, and I see the record full of country condition documentation, which is subjective and not objective. I haven't even gone into Mr. Ahmadi's subjective fear, which I believe is not 100. You're saying there's no evidence that he could return and be unharmed, even Kabul? You're saying there's no evidence? I'm saying that there is at least a 50 percent chance that he would be harmed, and that's above the burden that he has to meet. I understand. That's a legal conclusion. But just answer my question. Are you taking the position there's no evidence that he could return and be unharmed? I'm not saying there's no evidence, but I'm saying as of 2003, the Taliban were still terrorizing Afghani citizens. Okay. Thank you. Case is argued. We'll stay on some other cases.
judges: Kozinski, Hug, Bea